UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES TALLEY, JR. and CHRISTOPHER J. BONDS, <br><br> Plaintiffs, <br><br> v. <br><br> THE HOUSING AUTHORITY OF COOK COUNTY, et al., <br><br> Defendants. | No. 21 CV 5425 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Using a voucher from defendant Housing Authority of Cook County, plaintiffs Charles Talley, Jr. and Christopher J. Bonds rented a home from defendants Alice Fen Lee and David Hart. Plaintiffs allege that Lee and Hart failed to maintain the rental unit despite repeated requests. When Talley and Bonds asked the Housing Authority to intervene, the Housing Authority failed to require Lee and Hart to make repairs, didn't find plaintiffs alternative housing, and suggested that they move to a different suburb. Plaintiffs bring claims against the Housing Authority for disability discrimination and for violations of the Fair Housing Act and the Fourteenth Amendment's Due Process Clause. Talley and Bonds sue Lee and Hart for race discrimination under the Fair Housing Act, and also bring five state-law claims against them. Defendants move to dismiss under Rule 12(b)(6). For the reasons discussed below, the motions are granted.

I.   **Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)).

II.  **Background**

Talley lived with his son, Bonds, in a rental property in the Village of Hoffman Estates. [65] ¶¶ 4–5, 25; *see id.* ¶ 40.[1] Talley leased the house from Lee and Hart and received a housing choice voucher from the Housing Authority. *Id.* ¶ 25.[2] Plaintiffs—who were both Black and disabled—moved into the rental property in September

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the amended complaint. [65].

[2] The Section 8 Housing Choice Voucher Program provides rental assistance to low-income families, enabling them to participate in the private rental market. *Khan v. Bland*, 630 F.3d 519, 523 (7th Cir. 2010). The program is funded by the federal government but administered by public housing agencies, which are state or local government entities. *Id.* (citing 24 C.F.R. § 982.1(a)). Public housing agencies issue administrative plans that set local policies for the program in accordance with Department of Housing and Urban Development rules. *Id.* at 523–24 (citing 24 C.F.R. § 982.54). Once a public housing authority decides that a participant is eligible, the authority issues the participant a voucher and the participant can search for housing. *Id.* (citing 24 C.F.R. §§ 982.202, 982.302). If a property owner leases a unit to a tenant under the program, she enters into a contract with the public housing authority. *Id.* at 524.

2003. *Id.* ¶¶ 4–5, 25 (Bonds was an amputee and required a wheelchair or crutches to get around; the complaint doesn't allege the nature of Talley's disability.).

In 2013, Talley and Bonds sent a letter to their landlords, informing Lee and Hart that there were water leaks and flooding in the home. [65] ¶ 26. Lee and Hart didn't fix the problems, and for the next eight years allowed the physical condition of the property to deteriorate. *Id.* ¶ 27. The village that plaintiffs lived in issued inspection reports showing health and safety violations. *Id.* ¶¶ 28, 40.[3] When plaintiffs tried to send those reports to Lee and Hart, however, their mail was returned undelivered. *Id.* ¶ 28.

Concerned about roof and foundation water leaks, a refrigerator and garage door that weren't working, and heating problems, in 2021 Talley and Bonds requested an emergency inspection with the Housing Authority's Section 8 housing specialist. [65] ¶ 30. The Housing Authority didn't make Lee and Hart fix the issues with the rental. *Id.* ¶ 31. At some point, Lee told plaintiffs that she would arrange for repairs, but did not follow through. *Id.* ¶ 32. There's an allegation that Lee and Hart refused to make timely repairs to the home because Talley and Bonds were Black and disabled. *Id.* ¶¶ 53–54, 87.

---

[3] A May 2021 inspection found (among other things) that the foundations required repair due to leaking and flooding, there was a water leak in a basement bathroom, water-damage needed repair, a refrigerator wasn't working properly, some windows couldn't open and close properly, and a porch and roof were installed without a permit. [65] ¶ 40.

The rental value of the home declined as a result of physical deterioration. [65] ¶ 35.[4] In May 2021, Talley told Lee, Hart, and the Housing Authority that unless repairs to the property were made immediately, he intended to withhold part of the rent. *Id.* ¶ 33. Through an employee, the Housing Authority told Talley that if plaintiffs withheld rent, their participation in the voucher program would be terminated. *Id.* ¶ 34. Talley and Bonds continued to ask for help from the Housing Authority. *Id.* ¶ 36. In June, the Housing Authority told plaintiffs that the home had failed to meet requirements and failed an inspection. [65] ¶¶ 41–42.

Talley and Bonds asked the Housing Authority for a voucher for a two-bedroom unit that could accommodate their disabilities. *See* [65] ¶ 37. The Housing Authority granted that request. *Id.* To move, plaintiffs needed moving papers, *id.* ¶ 38, and Talley complied with the procedural requirements to obtain that paperwork. *Id.* ¶ 48. In July 2021, Talley asked the Housing Authority what the holdup was with the moving paperwork, and offered to tender all of the withheld rent. *Id.* ¶ 43. A month later, a program manager at the Housing Authority told Talley and Bonds that all of the withheld rent needed to be paid before the Housing Authority would issue the moving papers. *Id.* ¶ 45. Although the Housing Authority scheduled a move briefing with plaintiffs, the Housing Authority also sent Talley a notice of termination of his voucher eligibility. *Id.* ¶ 48. There's an allegation that the Housing Authority ultimately refused to issue Talley and Bonds the required paperwork, *id.* ¶ 39, but

---

[4] Plaintiffs suffered emotional and physical distress as a result of their landlords' actions. *Id.* ¶¶ 99–102.

4

exhibits attached to the initial complaint show that moving papers were issued. *See* [1] at 96.

Talley asked for an informal hearing on his voucher status, and sent the Housing Authority documentation showing code violations at the property. [65] ¶ 49. The Housing Authority didn't give plaintiffs a chance to show that their landlords had breached the lease, rent wasn't owed, or to state their case for moving papers and against termination of their voucher eligibility. *Id.* ¶¶ 46, 50, 65–72.

While plaintiffs wanted the Housing Authority to find them replacement housing in the Village of Hoffman Estates, the Housing Authority suggested that Talley and Bonds move to an apartment complex in Evanston, Illinois, where there were more Black residents than in the Village. [65] ¶¶ 59–62; *see id.* ¶ 73. There's an allegation that because of plaintiffs' race, the Housing Authority didn't try to find a suitable rental unit in the Village. *Id.* ¶ 63.

Lee filed an eviction action against plaintiffs in state court based on alleged nonpayment of rent. [65] ¶ 51. There's an allegation that Lee's action was filed to retaliate against plaintiffs for trying to ensure that the property complied with applicable codes and regulations. *Id.* ¶ 52.

### III. Analysis

Plaintiffs bring six claims against the Housing Authority's executive director, defendant Richard Monocchio. [65] ¶¶ 7, 65–86. The official-capacity claims against Monocchio are just another way of suing the Housing Authority, which has appeared and is defending the case. *See Bridges v. Dart*, 950 F.3d 476, 478 n.1 (7th Cir. 2020)

(quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The complaint doesn't make any specific allegations against Monocchio, and the claims against him are redundant. *See Varela v. Bd. of Control, Lake Cnty. High Sch. Tech. Campus*, No. 17 C 5832, 2018 WL 2689535, at *4 (N.D. Ill. June 5, 2018) (collecting cases). Defendant Monocchio is dismissed.

The claims against defendant Hart are also dismissed. *See* [65] ¶¶ 87–102. Hart was never served, *see* [27], and more than ninety days have passed since the complaint was filed. *See* [1]. Plaintiffs have not shown good cause for the failure to serve Hart: he is also dismissed from the case. *See* Fed. R. Civ. P. 4(m).

With Monocchio and Hart dismissed, that leaves the claims against the Housing Authority and Lee.

### A. Section 1983

The Housing Authority is an Illinois municipal corporation. [65] ¶ 6. Municipalities acting under color of state law are liable for constitutional torts arising from their policies or customs. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 616–17 (7th Cir. 2022) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 (1978) and *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789–96 (7th Cir. 2014)). Municipalities are responsible for their own violations of the Constitution and federal law, and cannot be held vicariously liable for the constitutional torts of their employees or agents. *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (citations omitted).

To state a *Monell* claim, Talley and Bonds must trace the deprivation of a federal right to an action taken by the Housing Authority. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *LaPorta*, 988 F.3d at 986. Municipal action can take the form of (1) an express policy, (2) a widespread practice or custom, or (3) an action by someone with final policymaking authority. *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 829 (7th Cir. 2022) (citations omitted). Plaintiffs must also allege that the Housing Authority's action was deliberate and caused the constitutional injury. *See Bd. of Cnty. Cmm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997) (citation omitted); *Laporta*, 988 F.3d at 986.

The complaint says that the Housing Authority deprived plaintiffs of their moving papers and terminated their participation in the voucher program without giving Talley and Bonds notice or a hearing, violating the Fourteenth Amendment's Due Process Clause, the Housing Act, and a related regulation. *See* [65] ¶¶ 65–72; U.S. Const. amend XIV, § 1; 42 U.S.C. § 1437d(k); 24 C.F.R. § 982. While the complaint identifies federal rights that the Housing Authority allegedly violated, plaintiffs don't allege that Talley's and Bonds's rights were violated by any municipal action: an express policy, widespread practice or custom, or a decision taken by a final policymaker. Plaintiffs' response brief—which appears to have been drafted for another case—doesn't identify a qualifying municipal action, or respond in any way to defendant's argument. *See* [104].[5] Without an allegation that municipal action caused the violations in question, plaintiffs' *Monell* claims cannot proceed.

---

[5] Plaintiff Bonds was represented by recruited counsel, [62], but his attorney withdrew. [94]. Bonds didn't subsequently file an appearance. Attorney William McMahon was recruited to

7

Counts one and two are dismissed.

**B.     Disability Discrimination**

The Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act all prohibit disability discrimination. *See* 42 U.S.C. § 3604(f) (FHA); 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (RA). To state a claim on the basis of a failure to accommodate, plaintiffs must allege that they were disabled, that the Housing Authority was aware of their disability, and that the Housing Authority failed to reasonably accommodate them. *See Watters v. Homeowners' Ass'n at Preserve at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022) (citing *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 n.1 (7th Cir. 2018)) (FHA and ADA); *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019) (citations omitted) (RA).

In this case, there's no dispute that Talley and Bonds were disabled, and that the Housing Authority knew about their disabilities. *See* [89] at 13–17. Plaintiffs allege two theories as to how the Housing Authority failed to accommodate them. *See* [65] ¶¶ 74–86. First, the complaint says that Talley and Bonds sought help from the Housing Authority to ensure that Hart and Lee maintained their rented home, but that the Housing Authority didn't force the landlords to fix the property. *Id.* Second,

---

serve as counsel for plaintiff Talley, and the order of recruitment did not explicitly cover Bonds. [96]. But it appears that McMahon represents both plaintiffs. *See* [104] at 1, 11 (Plaintiffs' response brief makes arguments on behalf of both plaintiffs and McMahon described his role as "Counsel for Plaintiffs."); [105] at 1, 4 (same). To the extent recruited counsel doesn't represent both plaintiffs, by failing to respond to defendants' arguments, Bonds waived individual opposition to both motions to dismiss. *See Lee v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (citations omitted) (A party that fails to respond to a motion to dismiss waives argument in support of the legal adequacy of the complaint.).

8

there's an allegation that the plaintiffs requested and didn't receive moving papers and a voucher for a two-bedroom dwelling suitable for their disabilities, and, relatedly, that the Housing Authority failed to find plaintiffs suitable housing. *Id.*

Neither of these theories holds up. As for the repairs, there's no allegation that plaintiffs asked for help maintaining their home as an accommodation. Generally, disabled individuals must request an accommodation to trigger liability. *See Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018) (citing *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (citations omitted) (same). What's more, the Housing Authority didn't have the power to force Lee and Hart to fix plaintiffs' rental unit. The Housing Authority had the ability to cut off funding or terminate contracts of property owners who failed to maintain dwellings, but couldn't otherwise compel property owners to make repairs. *See* The Housing Authority of Cook County, *Housing Choice Voucher Program Administrative Plan* 186 (2021). Plaintiffs were in contact with their landlords and directly requested repairs, *see* [65] ¶¶ 29, 32–33, and the complaint doesn't show that the Housing Authority failed to accommodate Talley and Bonds in this way.

Plaintiffs' second theory of a failure to accommodate fails for different reasons. Talley and Bonds requested a voucher for a two-bedroom apartment and moving papers as a reasonable accommodation, [65] ¶ 75, but the complaint says that the Housing Authority approved the request, *id.* ¶ 37, and correspondence attached to the initial complaint shows that Housing Authority issued the voucher and gave

9

Talley the requested moving documents. [1] at 52, 96.[6] There's no allegation that Talley and Bonds asked the Housing Authority to find housing for them as an accommodation, and, even if they had, the Housing Authority wasn't responsible for finding housing for voucher program participants. *See* 24 C.F.R. §§ 982.1(a)(2), 982.302; *see also Khan v. Bland*, 630 F.3d 519, 524 (7th Cir. 2010) ("Once a [public housing agency] determines that a participant is eligible and that there is available space in the program, the PHA issues the participant a voucher and the participant can search for housing.").

Plaintiffs make no argument in defense of their theories of failure to accommodate, *see* [104], and the complaint fails to plausibly allege any claim for disability discrimination. Counts four, five, and six are dismissed.

## C. Race Discrimination

The Fair Housing Act prohibits discrimination on the basis of race in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with a rental. 42 U.S.C. § 3604(b). To plead a discrimination claim under the FHA, Talley and Bonds must allege basic details about the discrimination, such as the offender, the time period in question, and the circumstances of the discrimination. *See Swanson v. Citibank*, N.A., 614 F.3d 400,

---

[6] When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citing *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007)). By failing to respond on this point, plaintiffs waived any argument that exhibits cited by defendants did not contradict the allegations in the complaint. *See Lee v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (citations omitted) (A party that fails to respond to alleged deficiencies in a motion to dismiss waives argument in support of the legal adequacy of the complaint.).

405 (7th Cir. 2010); *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (finding that when a claim for housing discrimination is uncomplicated, minimal factual allegations are sufficient to state a claim under *Twombly* and *Iqbal*).

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. A claim under § 1982 requires an allegation of an intent to discriminate, and plaintiffs' FHA and § 1982 claims rise and fall together. *See Watters v. Homeowners' Ass'n at Preserve at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022) (citation omitted); *Nguyen v. Patek*, 14 C 1503, 2014 WL 5293425, at *2 (N.D. Ill. Oct. 16, 2014) (citations omitted). Plaintiffs bring claims for racial discrimination under the FHA against both the Housing Authority and Lee, and a § 1982 claim against the Housing Authority.

According to the complaint, the Housing Authority discriminated against plaintiffs because they were Black when it (1) refused to actively assist them in finding accessible housing in the Village of Hoffman Estates and (2) attempted to steer them to an apartment in Evanston. [65] ¶¶ 59–64, 73. Plaintiffs have adequately outlined the time period and the type of discrimination at issue in their claims against the Housing Authority, but haven't identified which individual(s) allegedly discriminated against them, or plausibly alleged that any discrimination occurred. As discussed above at 9–10, the Housing Authority wasn't required to actively assist Talley and Bonds in finding housing. And plaintiffs haven't alleged that defendants were aware of their race or the existence of any disparate treatment

11

(for instance, that the Housing Authority actively assisted white residents find homes, or directed residents of other races with comparable needs towards the Village of Hoffman Estates, rather than Evanston). While the theory of discrimination at issue isn't complicated, the complaint doesn't provide enough facts to state any race-discrimination claim against the Housing Authority.

Plaintiffs allege that Lee discriminated against them based on their race when she refused to make timely repairs to their leased property. [65] ¶¶ 53–54, 87.[7] There are no factual allegations supporting this theory of discrimination. For example, the complaint doesn't allege that Lee knew that plaintiffs were Black, or include any facts that suggest that Lee's refusal to repair the property involved race in any way. *Cf. Swanson v. Citibank*, N.A., 614 F.3d 400, 402–03 (7th Cir. 2010). Plaintiffs outline some of the basics about Lee's alleged discrimination. But setting aside legal conclusions, there's no factual support for the allegation that Lee's failure to repair the property was racially motivated. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (Factual allegations must be enough to raise a right to relief about a speculative level.); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (same).

---

[7] Talley and Bonds have Article III standing to bring this claim. See *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)) (To establish standing, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."). The complaint says that Lee's discrimination deprived Talley and Bonds of the use and enjoyment of their rented dwelling. [65] ¶ 87. These concrete, identifiable losses of property rights were allegedly caused by Lee's discrimination, could be redressed by an award of damages, and are a sufficient injury-in-fact under Article III. *See Craftwood II, Inc. v. Generac Power Systems, Inc.*, 920 F.3d 479, 481 (7th Cir. 2019); *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

Counts three and seven are dismissed.

### D. Further Amendment Would be Futile; State-Law Claims

Ordinarily, plaintiffs should be given at least one opportunity to amend a complaint. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015)). After receiving defendants' first motions to dismiss, [25] at 8–10, 14–17, 22–23; [30] ¶ 19, plaintiffs were on notice of the deficiencies with their federal claims against the Housing Authority and Lee. Talley and Bonds amended their complaint, [65], are still unable to state a claim, and haven't asked for leave to file a second amended complaint. *See* [104]; [105]. Amendment of the federal claims against the Housing Authority and the Fair Housing Act claim against Lee would be futile, and so those claims are dismissed with prejudice.[8] *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684–87 (7th Cir. 2014) (citations omitted).

Plaintiffs brought state-law claims against Lee for (1) breach of lease, (2) breach of the warranty of habitability, (3) retaliatory eviction, and (4–5) negligent and intentional infliction of emotional distress. [65] ¶¶ 88–102. When all federal claims are dismissed before trial, the presumption is that the district court should relinquish jurisdiction over any state-law claims. *Refined Metals Corp. v. NL Indus.*

---

[8] Amendment of the Fair Housing Act claim against Lee is also futile because, after a bench trial, a state court found that Talley's interference—not race discrimination—explained Lee's failure to repair the property in question. *See* [108]; *Lee v. Talley, et al.*, Case No. 20213005866, at 77 (Ill. Cir. Ct. April 28, 2022). In light of the state-court finding, a contrary allegation of Lee's motive would not be plausible.

13

*Inc.*, 937 F.3d 928, 935 (7th Cir. 2019) (quoting *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007)). There is no longer any basis of federal jurisdiction in the case, and I decline to exercise supplemental jurisdiction over the remaining state-law dispute between plaintiffs and defendant Lee. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

### IV. Conclusion

Defendants' motions to dismiss, [85]; [88], are granted. Defendant Hart is dismissed for lack of service. Plaintiffs' motion for a preliminary injunction, [74], is terminated as moot. The federal claims are dismissed with prejudice and the state-law claims are dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: December 14, 2022